Hattie WELLS, Appellant,

v.

KENTUCKY APPALACHIAN INDUS-TRIES, INC., and Workmen's Compensation Board, Appellees.

Court of Appeals of Kentucky,

May 21, 1971.

Robert J. Greene, Perry & Greene, Paintsville, for appellant.

J. K. Wells, Paintsville, J. Keller Whitaker, Workmen's Compensation Board, Frankfort, for appellees.

STEINFELD, Judge.

This is an appeal from a judgment of the Floyd Circuit Court which sustained the opinion and order of the Workmen's Compensation Board denying appellant's claim for workmen's compensation benefits. The board found that Mrs. Wells "did not sustain an injury arising out of or in the course of her employment." The circuit court decided that the evidence supported the "factual findings of the board that plaintiff's disability was not connected with her employment." We affirm.

On July 15, 1968, appellant, Hattie Wells, age 29, began work for appellee, Kentucky Appalachian Industries, Inc., and continued with that company until she was terminated in May 1969. In her application for adjustment of her claim she alleged "that between Nov. 1968 and March 1969 (she) was injured * * *," but she testified that the condition of which she complains "started in September 1968." She was recalled July 22, 1969, but she said she was not able to go back to work because of her physical condition.

Her duties were to operate a machine which sewed webbing on tents weighing approximately 300 pounds. She testified that as she was pulling a tent over the machine she experienced pain in her neck and that "it felt like when you get a crick in your neck when you sleep with your neck in a strain." She also said that she had never experienced anything like that before. About a week later she told one of her bosses about it. She explained that this pain continued for some time and that sometimes she would be up all night because of the pain in her ear; that frequently in the morning she could not get a spoon into her mouth.

On November 1, 1968 she consulted Dr. Maurice Hall who prescribed conservative treatment including eardrops and that she wear cotton in her ear and sleep on a hot water bottle. She followed his advice. He did not testify.

In March 1969 she consulted Dr. W. T. Anderson who prescribed pain pills and antibiotics. Dr. Anderson diagnosed her condition as muscle strain and said that she was either suffering from neuritis or myofascitis. He testified that Mrs. Wells could not return to her regular job because there would be the same pull and stress on the mastoid muscle, the things she had been doing which caused her medical problems. He thought she should never return to that type of work.

For the defendant T. Rothrock Miller, an orthopedic surgeon, testified that he found a "definite palpable click in the right temporomandibular joint" when Mrs. Wells opened and closed her mouth. He noted that all of her upper teeth and many of her lower teeth were missing. He said she was using an upper denture, which she had used for about nine years, but no lower denture prosthetic. His diagnosis was that she had a degenerative condition or derangement of the right temporomandibular joint caused by malocculsion, which was "in no way related to any specific injury such as she describes." Dr. Miller suggested that Mrs. Wells see Dr. Joseph W. Dougherty, an oral surgeon. Dr. Dougherty testified that he found a malocculsion or "overclosure" which would cause such pain as Mrs. Wells was experiencing, and he opined that her problem was caused by missing teeth and improperly fitting dentures; that it could be corrected by "prop-

erly fitting dentures." He suggested she see a dentist who did prosthetic work, as he did not.

Mrs. Wells also consulted Dr. G. B. Smith, a dentist, who testified that he found an imperfect occlusion, but he did not feel it was causing the pain.

■ It will be seen from the foregoing that there was conflicting medical testimony which was resolved by the board adverse to the claim of Mrs. Wells. The determination of the board on this factual issue was conclusive unless the total evidence was so strong as to compel a finding in her favor, or "so persuasive" that it was clearly unreasonable for the board not to be convinced by it. Hudson v. Owens, Ky., 439 S.W.2d 565 (1969); Wyatt v. Federal Materials Company, Ky., 457 S.W.2d 479 (1970).

Appellant contends that the proof in this case falls into the exception and that the testimony favorable to her was so persuasive that as a matter of law the medical testimony for the employer did not overcome that which had been presented by the claimant. She relies on National Stores, Inc. v. Hester, Ky., 393 S.W.2d 603 (1965), in which the claimant was held entitled to compensation when she developed tenosynovitis, an inflammation of the sheath or membrane which surrounds a tendon, which was caused by her continuous use of her right hand in operating a calculating machine. We find *Hester* not in point as there the uncontradicted medical testimony was that the claimant's tenosynovitis was solely caused by the work she was doing. The issue was whether she was suffering from an occupational disease.

■ It is our opinion that the medical proof introduced on behalf of the employer had sufficient probative value to authorize the board to find as it did. We also find that the contrary proof was not so strong as to require the board to find differently than it did.

The judgment is affirmed.

All concur.