KENTLAND ELKHORN COAL
COMPANY, Appellant,

v.

Earl D. JOHNSON et al., Appellees.

Court of Appeals of Kentucky.

March 25, 1977.

Kelsey E. Friend, Pikeville, Kenneth E. Hollis, Acting Gen. Counsel, Department of Labor, Frankfort, William L. Huffman, Director, Workmen's Compensation Bd., Frankfort, for appellees.

John H. Baird, Pikeville, for appellant.

Before HOWARD, LESTER and PARK, JJ.

PARK, Judge.

While employed by the appellant, Kentland Elkhorn Coal Corporation, the appellee, Earl D. Johnson, received a work related injury to his back on August 31, 1972. Johnson returned to work for Kentland Elkhorn Coal Corporation in January 1973 at his same job, driving a truck. Johnson received a second work related back injury on October 6, 1973. The Workmen's Compensation Board found that Johnson was 70% occupationally disabled solely as a result of the second injury on October 6, 1973. The Board found that there was no permanent disability as a result of the first injury on August 31, 1972. The Board also held that there was insufficient proof to assess any liability against the Special Fund. Kentland Elkhorn Coal Corporation appeals from a judgment of the Pike Circuit Court affirming the opinion and award of the Board.

On this appeal, two issues are raised. First, did the Board err in attributing all of Johnson's disability to the second injury? This issue is important because the benefits payable in 1972 were at a lower rate and for a shorter period of time than benefits payable for an injury sustained in 1973. Second, did the Board err in failing to assess any liability against the Special Fund?

A claimant in a Workmen's Compensation proceeding has the burden of proof. If the Board rules against the party having the burden of proof, the test is whether the evidence was so overwhelming as to compel a finding in his favor. *Wagoner v. Smith*, Ky., 530 S.W.2d 368 (1975). If the Board finds in favor of the party having the burden of proof, the only question on appeal is whether the Board's findings are supported by substantial evidence. *Smyzer v. B. F. Goodrich Chemical Company*, Ky., 474 S.W.2d 367 (1971).

In this proceeding, Johnson had the burden of proving that he was occupationally disabled as a result of the second injury in 1973. Therefore, this court must determine whether there was substantial evidence to support the Board's finding that Johnson was 70% occupationally disabled as a result of the second injury. With respect to the Special Fund, the employer is the party primarily liable. Any liability of the Special Fund is to reimburse or indemnify the employer who is primarily liable. *Yocom v. Milish*, Ky., 497 S.W.2d 702 (1973). Therefore, Kentland Elkhorn Coal Company had the burden of proving any liability of the Special Fund. This court must determine whether the evidence was so overwhelming as to have compelled a finding by the Board of some liability on the part of the Special Fund.

The Board had the benefit of the testimony of three physicians: Dr. Leatherman on

behalf of Johnson, and Dr. Miller and Dr. Thompson on behalf of the employer. In addition, the Board received the report of Dr. Goodman who was appointed pursuant to KRS 342.121. None of the four physicians in question saw Johnson prior to the second injury on October 6, 1973. In each instance, the physician's opinion was based upon an examination of Johnson made after the second injury and upon the history given by Johnson.

Dr. Thompson testified that Johnson suffered no permanent disability as a result of either injury. Dr. Leatherman testified that Johnson had a 50% functional disability as a result of his injury on October 6, 1973. When asked on cross-examination whether any of this disability could be attributed to the earlier injury on August 31, 1972, Dr. Leatherman testified:

"Well, I can't say for certain, having not seen him in the interval between the two accidents or not seen him prior to the second accident, and it would only be conjectural and by his history, so that it would be very difficult for me to evaluate him as to residual disability or whether he had any or not following the first accident."

When asked about Johnson's history of having returned to work following the first injury, Dr. Leatherman testified on re-direct examination:

"Well, I think it would put more weight on the effect of his second accident, if he were able to return to full heavy work as a result of the healing process of his first injury, even though he did complain of some symptoms."

Dr. Miller testified that Johnson had a 35% functional disability to the body as a whole, although the disability was not necessarily permanent. When asked his opinion as to the cause of the disability, Dr. Miller testified:

"I felt it was virtually impossible to pinpoint one specific factor. The injury which occurred in 1972 and from which he stated that he was never fully recovered was probably the primary cause; however, his excessive obesity and his

second injury certainly contribute their shares."

In his report, Dr. Goodman found that Johnson had a 10% functional disability to the body as a whole. Of this disability, Dr. Goodman attributed one half, or 5% impairment to the arousal of a pre-existing dormant nondisabling disease condition. The remaining disability he attributed equally to each of the two injuries. In other words, Dr. Goodman assigned a 2½% functional disability to the injury of August 31, 1972, and a 2½% functional disability to the injury of October 6, 1973.

■ In addition to the medical evidence, the Board also had before it the testimony of Johnson. Johnson testified that the injury of August 31, 1972, occurred as he was leaning out the cab of his truck. As he was reaching back to latch the tailgate of his truck, Johnson felt a sharp pain in his back. Johnson returned to work in January 1973, and he continued to perform his regular work until the date of his second injury on October 6, 1973. On that occasion, Johnson was operating a high lift. His feet slipped as he got out of the high lift, and he fell approximately seven or eight feet to the ground striking the center of his back.

■ This court concludes that there was substantial evidence in the record to support the Board's finding that Johnson's disability was solely attributable to the second injury in 1973. This court further concludes that the evidence was not so overwhelming as to compel a finding by the Board that the Special Fund was responsible for a portion of the disability. None of the physicians had examined Johnson prior to the date of his second injury. Consequently no witness could testify from observation that Johnson suffered any disability prior to the second injury. Although Johnson was continuing to suffer some symptoms from the first injury, he was able to return to his regular work, something that he was unable to do after the second injury. The first injury occurred as Johnson was straining to reach something; the second injury occurred when he fell on his back

from a height of seven or eight feet. The evidence was not so compelling that the Board was required to find that Johnson was suffering from a dormant non-disabling degenerative disc condition which was aroused into active disability as a result of the second injury. This case is distinguishable on it facts from *Haycraft v. Corhart Refractories Co.*, Ky., 544 S.W.2d 222 (1976). The circuit court did not err in affirming the order and award of the Board.

The judgment of the circuit court is affirmed.

All concur.